Day, J.
Two questions are presented: 1. Did the-court érr in sustaining the demurrer of the plaintiff to the-second defense in the answer of the company? 2. Did the-court err in overruling the motion of the company for a new trial?
1. It is merely averred in the second defense that, by the law of Pennsylvania, where the injury occurred, “ an employe has no action against his principal or employer for the negligence of a fellow employe engaged in the same common employment.” This is nothing more thau a statement of what is recognized as a general principle in the law of this state. Had the action-been founded merely on the negligence of a fellow servant engaged in the same-employment, the demurrer, to the answer, ought to have been sustained to the petition, as the first defective pleading, for it would not have shown a cause of action. But-the case made in the petition does not rest alone on that *199 averment. It is alleged that the injured servant was subordinate to the negligent servant, thereby bringing the ease-within an exception to the general rule. That allegation was the gist of the action, and the second defense does not meet it. It is not averred what the law of Pennsylvania is-in such cases. The court, therefore, well might sustain the-demurrer to that defense.
2. The motion for a new trial raises the question whether,, upon the whole evidence, the plaintiff below was, in law, entitled to recover.
lie rested the case upon his own evidence alone. All the other employes on the train but the engineer, who had died, contradicted him upon every material point. But, conceding that the jury were warranted in believing his testimony against that of four other witnesses, was he entitled to recover on the most favorable view of the evidence ?
The action was founded upon the alleged negligence of the conductor and engineer. There was, however, no evidence implicating the conductor. Nor, indeed, did it implicate the deceased engineer in the negligence charged, for the plaintiff below testified that the engineer -was absent from the engine when the accident occurred, and that it was, at that time, under the sole control of the fireman.
The case, then, rests wholly upon the supposed negligence of the fireman in failing to give the signals required by the rules of the company for the starting of trains.
But, regarding the fireman as engineer pro hac vice, the question then is, whether the company is liable to a brakeman for an injury occasioned by the negligence of an engineer, where both were employes of the company on the same train.
Both were employes of one master, and were engaged in carrying out a common object;they were therefore, fellow-servants. Manoille v. C. § T. R. R., 11 Ohio St. 417.
A master, whether an individual or a corporation, is responsible to his servants for his own negligence, but not for that of their fellow-servants. This is the general rule, subject, however, to the modification recognized in the juris *200 prudence of this state, that where one servant is placed in a position of subordination to, and subject to, the orders and control of another servant of a common master, and tb e subordinate servant, without his fault, is injured tin ough the negligence of the superior servant while both are acting in the common service, the master is liable therefore. P., Ft. W. & C. R. W. Co. v. Devinney, 17 Ohio St. 197; Berea Stone Co. v. Kraft, 31 Ohio St. 287.
Nor, indeed, is this modification inconsistent with the general rule; it proceeds upon the idea that the superior servant, quoad his subordinate, is the representative, or alter ego, of the master; therefore the negligence of such •superior servant is regarded as the negligence of the master.
Whether regarded' as a modification of, or an exception to, the general rule, it has ever been strictly confined to •cases where the superior servant represents the power or authority of the master over the subordinate servant, and is one to whom he must look and obey as one having the authority of the master over him. Such an agency must not be confounded with the position of one charged with special duties to be performed under general or special instructions from the master, who retains the general supervision of the business, or had committed it to a servant - to whom and to whose direction all the others are subject.
The rule, then, as modified, rests upon the idea that one who enters the service of another takes the ordinary risks of the employment in which he engages, including the negligent acts of his fellow-servants in the course of the employment, but does not take the risk arising from the negligence of the master himself, nor of a servant whom the master has placed in his own position of authority over him.
Whether one servant is placed by a common master under the authority or government of another servant, thereby creating the relation of superior and subordinate between them, is a question to be determined from the evidence in each particular case.
The only evidence relied on in the present ease to estab *201 'list that relation between a brakeman and an engineer, was tke rules of the company requiring a brakeman to apply and loosen brakes upon certain specified signals of tke engine whistle, when given by tke engineer in accordance with tke rules.
No special authority was proved. Tke rules of tke company, which all its employes agree to obey, carefully specify, as to each of tke numerous classes of its employes, to whom they shall respectively be subordinate. They place tke fireman under tke control of tke engineer, but they do not place a brakeman under tke control of, or subordinate to, an engineer. They provide that brakemen shall receive their instructions from tke division superintendent, and that, “ while on tke train, they shall be under tke immedi,ate orders of tke conductor, whose orders they shall obey.”
Among tke signals to be given under tke rules by an engineer, only two relate to tke duties of brakemen, viz.: “ One blast of tke whistle when running, is a danger signal, and a notice to apply tke brakes; two blasts of tke whistle is a notice to loose tke brakes.” Many other signals are required to be given by engineers as notices, but not as notices to brakemen more than to others as to whom there is no pretense of subordination to tke engineer created thereby.
By tke company’s rules, freight brakemen “ are charged with tke management of tke brakes according to circumstances and the signals of tke engineman.” "When tke op•eratiou of tke train requires tke brakes to be applied or loosed, tke engineer is required by tke company to give a ■“ notice ” (not an order) by a specified signal, and tke brakeman is required, by tke rules of tke company (not the command of tke engineer), to manage tke brakes in accordance with the notice. Each one acts under tke special command of the company, and neither is responsible to tke other; but both perform their respective duties under tke control of, and subordinate to, tke conductor. Tke rules clo not •subject a brakeman, while on tke train, to tke authority of two superiors — they commit that to one servant only. *202 There is nothing in the duties required of brakemen which requires that they should be subordinate to the authority of an engineer; therefore no such authority is given him.. He is merely required to give “ notice ” of what aid is needed in the working of the train, and the company supply the needed aid through the brakemen, whom it has expressly required to perform their duties under the control of the conductor, and not of the engineer.
To secure the safe management and transit of trains, and' the safety of passengers, employes, and others, from the-nature of the business, many signals, and of various kinds,, are required. They are required, by the rules, to be given hy all classes of employes, conductors, engineers, brakemen,. switchmen, stationmen, flagmen, trackmen. A corresponding duty of heeding signals is required of all employes, without reference to their grade of employment; and yet it was never supposed that thereby any relation of superior and subordinate was created or necessarily existed. The-system of giving notice by signals is a mere mode of doing-the business of the company, arising from the necessity of the case. They are to be given and heeded by both superiors and subordinates, in accordance with the nature of the thing to be done, or as circumstances may require. It is-as much 'the duty of an engineer to be controlled by the-signals of brakemen, given under the rules of the company, as it is the duty of brakemen to be governed by'the-signals of an engineer, given under the same rules, and neither one, more than the other, is thereby made subordinate to the other. That relation can be created only by the-act of the master conferring his authority upon one over the other ; when that is done, then one represents the authority of the master, and therefore may control the other, who, for that reason, becomes his subordinate. No such relation of superior and subordinate is shown to have existed between the engineer and brakeman'in this case; therefore they were fellow-servants, within the general rule, which gives no right of action against the company *203 for an injury sustained by one through the negligence of the other.
It follows that the court erred in overruling the motion for a new trial, and that the judgment of the court of common pleas and that of the district court must be reversed
Scott and Ashburn, JJ., dissented.